

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS
## AUSTIN

GERALD C. MANN
ATTORNEY GENERAL

Honorable W. Lee O'Daniel
Governor of Texas
Austin, Texas

Dear Governor O'Daniel:

Opinion No. 0-1479
Re: Issuance of warrants on State
Department of Public Welfare
Fund for Old Age Assistance
pursuant to Senate Bill No.
36.

We are pleased to reply to your letter of September 21, 1939, relating to the above matter, which we shall quote in full:

"Senate Bill No. 36 known as the State Department of Public Welfare bill was passed by the regular session of the Forty-sixth Legislature and provided for assistance to aged persons of Texas, and as an act superseded House Bill No. 8 passed by the Third Called Session of the Forty-fourth Legislature.

"Senate Bill No. 427 passed by the Regular Session of the Forty-sixth Legislature and known as the departmental appropriation bill, appropriated all revenues accruing under existing laws for the biennium beginning September 1, 1939 to the State Department of Public Welfare for old age assistance.

"It is estimated that $19,246,000.00 per year will be required to maintain the pension program on the 1938-39 basis for the biennium beginning September 1, 1939, of which one-half, or approximately $9,623,500.00, represents the approximate amount required each of the years of the

biennium from State funds. Estimated revenue for the biennium beginning September 1, 1939, amounts to approximately $11,575,000.00 for each year or $23,150,000.00 for the biennium.

"House Bill No. 179 passed by the Regular Session of the Forty-sixth Legislature allocated approximately $2,230,000.00 from the old age assistance funds during the approximate period of the fiscal year ending August 31, 1940, for the liquidation of warrants issued prior to September 1, 1939. The allocation deprives the fund of revenue for old age assistance during the first part of the current period, the amount of which is necessary to maintain the program unless the revenue for the entire biennium can be equalized over the entire two years of the appropriation.

"I will appreciate your opinion on the following questions:

"(1)  It is contemplated that estimates of revenue under present laws with necessary periodical revisions will have to be made for the current period, which is the biennium beginning September 1, 1939, and after deduction of the amount necessary to liquidate old warrants ($2,230,838.50) the balance should be approximately equally allocated by months to maintain the program for the current biennium, Is such a procedure legal, and if so, what agency of the Texas government is required to make such estimates of revenue?

"(2)  Assuming that investors may be found who will agree to hold non-interest-bearing old age assistance warrants, without discount, issued under proper authority to old age assistance recipients, by authority of the State Department of Public Welfare, may such warrants be issued at any time during the current two-year period, as required, to carry out the program on the present basis, provided such warrants issued do not exceed the available appropriated revenue for assistance purposes for the current biennium?

"(3) Assuming that there would be an accumulation of validly issued outstanding warrants at February 1, 1941, not exceeding the uncollected appropriated revenue for the final seven months of the biennium, would such warrants, under existing laws, be a charge against appropriated old age assistance revenues to be collected during the period February 1, 1941, to August 31, 1941? (Revenue to be collected under present laws for the period from February 1, 1941, to August 31, 1941, is estimated to be approximately $6,625,000.00).

"(4) Section 44 of Senate Bill No. 56 known as the State Department of Public Welfare Act reads as follows:

"Sec. 44. 'If at any time State Funds are not available to pay all grants of assistance in full as authorized in this Act and in House Bill No. 8, Acts Forty-fourth Legislature, Third Called Session, said grants shall be prorated in accordance with requirements of the Federal Social Security Board, insofar as those grants are concerned for the payment of which in part Federal Funds are allocated by said Social Security Board.

"The effect of this section of the Act apparently must be considered in the interpretation of the validity of warrants issued, against appropriated revenues to the assistance fund. This section seems to mean that such prorations and limitations as are applied by the statute are contingent upon the Federal Social Security Board first applying such prorations and limitations, and until applied by them in matching state funds, is not to be applied by the State Department of Public Welfare in their administration.

"In this connection I would like to ask if there is any law on our statutes requiring the prorating of payments to recipients of old age assistance other than the above section, and what is the proper interpretation of the above section?

"Due to an existing condition in which
time is the essence of the situation, I
will appreciate your effort to furnish me
your opinion on the questions submitted as
early as possible."

The determination of the several questions asked
in your letter necessitates a careful consideration of the
constitutional provision and statutes applicable thereto.

Old Age Assistance legislation was authorized by
constitutional amendment adopted at an election held August
24, 1935, which now appears as Section 51b, Article 3, of
the Texas Constitution, and reads, in part, as follows:

"The Legislature shall have the power
by general laws to provide, under such
limitations and restrictions and regula-
tions as may be deemed by the Legislature
expedient, for old age assistance and for
the payment of same not to exceed Fifteen
Dollars ($15) per month each to actual bona
fide citizens of Texas who are over the
age of sixty-five (65) years . . ."

It is to be noted that this constitutional amend-
ment is on its face neither mandatory nor self-executing. It
merely creates an additional exception to the prohibition con-
tained in Section 51, Article 3, against the granting of
public moneys to individuals, etc., and to that extent, ex-
pands the authority of the Legislature.

The first enactment under this constitutional amend-
ment was passed in 1935 by the Second Called Session of the
44th Legislature, being House Bill No. 26, Chapter 472, p.
1854, of the laws of said Session of the Legislature, which
bill was entitled the "Old Age Assistance Act." This Act
created the Old Age Assistance Commission, set up the stand-
ards and methods for its operation, and created the "Texas
Old Age Assistance Fund" as a special fund in the Treasury
out of which all expenses of administration and benefit
payments to the recipients of Old Age Assistance were to be
paid. The general plan and outline for the administration
and payment of Old Age Assistance which was set up by said
House Bill No. 26 is still maintained although the Act has
been twice amended.

In October, 1936, the 44th Legislature at its Third Called Session amended the Old Age Assistance Act by House Bill No. 8, Chapter 495, p. 2040, of the General and Special Laws of said session by designating the State Board of Control as the Old Age Assistance Commission, making a few minor changes in the administrative details of the Act and providing omnibus tax measures, the proceeds of which were made payable to the Old Age Assistance Fund.

The Old Age Assistance Act was amended a third time by Senate Bill No. 36, enacted by the Regular Session of the 46th Legislature in 1939. This Act places the administration of Old Age Assistance under the supervision of the newly-created Department of Public Welfare. What was designated as the "Old Age Assistance Fund" in House Bill No. 8 is made a division of the "Texas Public Welfare Fund." Only minor changes, however, are made in the general plan of administering Old Age Assistance and the fund out of which Old Age Assistance payments are made. Said Senate Bill No. 36 is the latest enactment of the Legislature on the question of Old Age Assistance and its provisions are therefore controlling, but a study and comparison of the three Acts above referred to indicates that the same general plan and purpose was sought to be accomplished by each of the three Acts. This being true, we believe that it will be helpful to examine and consider those provisions in each of the three Acts which relate to the fundamental question contained in your letter, i.e., whether warrants may be issued against anticipated revenues to come into the Old Age Assistance Fund when there are no moneys presently available in said Fund for the payment of such warrants.

House Bill No. 26, chapter 472, Acts 1935, 44th Legislature, Second Called Session, in Section 9 (b) thereof provides, in part:

> ". . . And for the purpose set out there is hereby appropriated out of such fund the sum of Twenty-five Million Dollars ($25,000,000) or so much thereof as may be necessary, for the biennium ending September 1, 1937. Provided that if the fund is insufficient to pay all grants in full, the same shall be paid pro rata based on the amount granted to each recipient."

House Bill No. 8, chapter 495, Act 1936, 44th Legislature, Third Called Session, in Article 1, Section 1, thereof

provides, in part:;

". . . In order that the needy aged
be cared for, it is necessary that the
State have funds on hand to meet the ac-
cruing obligations therefor."

and in Section 11 (b) thereof, provides:

". . . and for the purposes set out
there is hereby appropriated out of such
fund the sum of Seven Million Dollars
($7,000,000), or so much thereof as may
be necessary, for the fiscal year ending
August 31, 1937. Provided that if the
fund is insufficient to pay all grants
in full, the same shall be paid pro rata
based on the amount granted to each re-
cipient."

Senate Bill No. 36, Acts 1939, 46th Legislature
Regular Session, provides in Section 44 thereof:

"If at any time State funds are not
available to pay all grants of assistance
in full as authorized in this Act and in
House Bill No. 8, Acts 44th Legislature,
Third Called Session, said grants shall
be prorated in accordance with requirements
of the Federal Social Security Board, in-
sofar as those grants are concerned for
the payment of which in part Federal Funds
are allocated by said Social Security Board."

It is to be noted that the above quoted provision
from House Bill No. 26 and the one quoted from House Bill
No. 8 are identical. While the wording of Section 44 of
Senate Bill No. 36 is somewhat different, we believe that
its intent and effect is the same as that of the provisions
of the prior two Acts. What is the meaning of the word
"available" in the phrase "if at any time State funds are
not available to pay all grants of assistance in full?"
"Available" is defined in Webster's New International Dic-
tionary, Second Edition as "at disposal; accessible or at-
tainable; as tickets available that day."

As aptly stated by Mr. Justice Brady of the Austin Court of Civil Appeals in the case of Lawson v. Baker, 220 S. W. 260:

"Statutes will be interpreted according to the popular meaning employed, except where used in a technical sense. In other words their effect will be determined by the plain and ordinary meaning of the language used."

There can be no question but that the plain and ordinary meaning of the word "available" refers to something which is presently at hand and usuable. We are unable to escape the conclusion that in the plain and ordinary meaning of the language used, moneys which may be expected to come into a fund eighteen months later are not available funds according to the popular meaning of the word "available".

We are persuaded that the Legislature intended in Section 44 of Senate Bill No. 56, as well as in the corresponding provisions of the prior Acts, above quoted, to insist that the Old Age Assistance Fund be administered on a "pay as you go" basis.

Senate Bill 56 itself appropriates no money. It merely reaffirms the allocation of certain taxes to the old age assistance fund, as indicated by the following provisions of S. B. 56.

Sec. 11b". . . All monies that have heretofore, or may be, allocated, for the purpose of carrying out the provisions of House Bill No. 8, Chapter 495, Acts of the Third Called Session of the Forty-fourth Legislature, to the Texas Old Age Assistance Fund shall, from the effective date of this Act, be allocated to and placed in the State Department of Public Welfare Fund to be used for the purposes for which they were created or appropriated."

Sec. 37a. "There is hereby created in the Treasury of the State of Texas a special fund to be known as the 'State Department of Public Welfare Fund', to be kept separate and apart from all other

funds by the State Treasurer. It is pro-
vided that the Legislature, out of any
monies allocated to said Fund, may appro-
priate sums of money sufficient to pay the
aid and assistance to needy citizens of
Texas and for the rendering of other ser-
vices as provided for in this Act. It is
further provided that, out of said Fund,
the Legislature may appropriate monies to
be used for the purposes of administering
this Act."

In accordance with the above allocation of income,
the Legislature in Senate Bill No. 427, Acts 1939, Regular
Session of the 46th Legislature, known as the Departmental
Appropriation Bill, appropriated this income of the Old
Age Assistance Fund to the State Department of Public Wel-
fare in the following language:

"All income to the Texas Old Age As-
sistance Fund, as transferred to the State
Department of Public Welfare Fund by Senate
Bill No. 56, Acts, 46th Legislature, Re-
gular Session, together with any balances
on hand at the end of a prior fiscal year,
is hereby appropriated for each of fiscal
years ending August 31, 1940, and August
31, 1941, to the State Department of Public
Welfare for old age assistance and for
salaries, equipment, supplies, travel,
maintenance, and contingent expenses neces-
sary in the extension of said old age as-
sistance and in administering all the duties
required of said Deparment by the Old Age
Assistance Laws, . . ."

It is to be noted that the Legislature here made
two separate and distinct appropriations "for each of fiscal
years ending August 31, 1940, and August 31, 1941." By this
language the Legislature manifestly intended that only the
income of the fund accruing during the fiscal year ending
August 31, 1940, should be spent in that year. Ignoring,
for the moment, the "pay as you go" direction of Section
44, Senate Bill 56, they very terms of this appropriation
forbid the expenditure during this fiscal year of more than
the income of this year. We do not wish to imply that the

Legislature might not have the power, under the Constitution,
to authorize the expenditure at any time of the anticipated
income of the fund during the current biennium. This was
expressly authorized by the Legislature in House Bill 179,
Acts 1939, 46th Legislature, Regular Session, and as we stated
in our opinion to you under date of February 14, 1939, opinion
No. O-315, this Act constituted a valid exercise of legis-
lative authority under the decisions therein cited. Charles
Scribner's Sons v. Marrs, 262 S. W. 722; McNeal v. City of
Waco, 89 Tex. 83, 33 S. W. 322; City of Corpus Christi v.
Woessner, 58 Tex. 462; City of Terrell v. Dessaint, 71 Tex.
770, 9 S. W. 593. We are here, however, not concerned with
the constitutional limitations upon the power of the Legisla-
ture to provide means for the payment of old age assistance. Our
problem is to determine what means the legislature has provided,
and what limitations it has imposed upon the State Department
of Public Welfare in its administration of the Old Age Assistance
Fund. The answers to these questions must be found in the ap-
plicable Legislative Acts. The above quoted provisions from
House Bill No. 26, House Bill No. 8 and particularly Section
44 of Senate Bill No. 36 clearly indicate, we believe, a con-
sistent intention on the part of the Legislature that old
age assistance shall be administered on a "pay as you go"
basis. This conclusion is confirmed by the fact that the Le-
gislature has deemed it necessary on two occasions to pass
emergency measures in the nature of express exceptions to that
general policy. We refer to House Bill 37, Chapter 496, Acts
1936, 44th Legislature, Third Called Session and House Bill
179, Acts 1939, 46th Legislature, Regular Session.

House Bill No. 37 authorized the Texas Old Age
Commission to issue interest-bearing warrants in the total
amount of $3,000,000.00 "when the cash balance of the moneys
deposited to the credit of said fund by the State of Texas
is insufficient to pay in cash the State's part of the pen-
sion requirements."

House Bill No. 179 authorized the issuance of an
additional $900,000.00 worth of interest-bearing "warrants
issued against the Texas Old Age Assistance Fund for the
payment of old age assistance benefits when the cash balance
of the moneys to the credit of said fund by the State of
Texas is insufficient to pay the State's part of the pension
requirement." This Act provides for the payment of these
warrants and other outstanding warrants which had been au-
thorized by House Bill No. 37, and appropriates money therefor

out of the Old Age Assistance Fund upon a schedule of pay-
ments as set out in the Act which extended to September 10,
1940, i. e., into the fiscal year ending August 31, 1941.
This schedule of payments is recognized in the Departmental
Appropriation Bill of 1939 (S. B. No. 427, Acts 46th Legis-
lature) and the money therefor is again expressly reappro-
priated therein. In the absence of the express authority
granted it by the Legislature by House Bill 179, the Old Age
Assistance Commission would not have been empowered to is-
sue this $900,000.00 worth of warrants when there was not
sufficient money in the fund to pay them (under Section 11b
of House Bill No. 8, quoted above) nor could it have pro-
vided that a part of such warrants should be paid out of reve-
nues to accrue during the fiscal year ending August 31, 1941,
there being no appropriation therefor. The State Depart-
ment of Public Welfare is a creature of the Legislature; it
may exercise only such powers as the Legislature has dele-
gated to it, and it may expend only such moneys as the Legis-
lature has appropriated to it. Pickle v. Finley, 91 Tex.
484, 44 S. W. 480.

The money appropriated to the State Department of
Public Welfare for old age assistance is not a certain sum
but consists of all the revenue accruing from certain desig-
nated taxes. In this respect the appropriation is similar
to that of the Highway Department. In construing the au-
thority of the Highway Department to expend the money appro-
priated to it, the Austin Court of Civil Appeals said in
Atkins v. State Highway Department, 201 S. W. 226:

> "Here is appropriated all of the funds
> coming from certain sources, which, as col-
> lected and deposited with the State Treas-
> urer to the credit of a special fund desig-
> nated as the "State Highway Fund.' No other
> money in the state treasury can be touched
> for the purposes stated in the acts here in
> question. No greater amount than that de-
> posited in said fund can be used for said
> purposes." (Underscoring ours)

Bearing in mind the statutes and general principles
hereinbefore discussed we shall proceed to a consideration of
the several specific questions asked in your letter.

> "(1) It is contemplated that estimates
> of revenue under present laws with necessary
> periodical revisions will have to be made for
> the current period, which is the biennium

> beginning September 1, 1939, and after de-
> duction of the amount necessary to liquid-
> ate old warrants ($2,230,838.50) the bal-
> ance should be approximately equally al-
> located by months to maintain the program
> for the current biennium. Is such a pro-
> cedure legal, and if so, what agency of the
> Texas government is required to make such
> estimates of revenue?"

We have been unable to find any statute which di-
rects that estimates of revenues which may accrue to the
Old Age Assistance Fund shall be made. In the event that
the State Board of Public Welfare or the Executive Director
of the State Department of Public Welfare should deem it
expedient to make such estimates, either pursuant to the re-
quirements of the Federal Social Security Board, or for any
other proper reason, we would suppose that either the Wel-
fare Board or the Executive Director could properly make
such estimates with the aid of the Comptroller, State Auditor
or any other qualified state officer.

It has been declared that the Highway Commission
may make estimates of revenues to accrue to the highway fund.
Johnson v. Ferguson, 55 S. W. (2) 153, (Austin Court of Civil
Appeals) at page 156:

> "No standard or criterion for estimat-
> ing them is prescribed by law; nor is there
> any express designation of the official,
> board or agency to make such estimate. It
> therefore follows necessarily that the high-
> way commission is vested with such authority
> in the general discharge of its important
> duties; and that in the exercise of such
> authority it is vested with the discretion
> of adopting such reasonable methods, stand-
> ards, and criteria as in its judgment are
> sound and appropriate."

Assuming that the State Board of Public Welfare or
the Executive Director has made such estimate of future reve-
nues of the Old Age Assistance Fund, we are unable to agree
with your statement that the estimated revenues for the bi-
ennium "after deduction of the amount necessary to liquidate
old warrants ($2,230,838.50) the balance should be approxi-
mately equally allocated by months to maintain the program

for the current biennium." Such a procedure would, we believe, be contrary to the expressed intention of the Legislature in three particulars:

(a) If the monthly quota, so determined, should at any time be greater than the credit balance in the Old Age Assistance Fund, then the Welfare Board may not authorize the issuance of warrants for such month in excess of such credit balance without violating the express direction of Section 44 of Senate Bill No. 36 to prorate the grants in such case. Section 44 does not say that grants shall be prorated if sufficient funds are not anticipated during the biennium. It says, "If at any time State funds are not available . . . said grants shall be prorated." The further direction that they shall be prorated "in accordance with requirements of the Federal Social Security Board" can only mean that in adopting the system or method of prorating, the State Board shall be guided by the requirements of the Federal Board, "insofar as those grants are concerned for the payment of which in part Federal Funds are allocated by said Social Security Board."

(b) By seeking to distribute the income of the biennium equally during the two fiscal years, the Welfare Board would be ignoring the fact that the appropriation bill makes a separate appropriation of the income of the fund to the State Department of Public Welfare "for each of the fiscal years ending August 31, 1940, and August 31, 1941." Under the most liberal construction of the word "available" the income to the fund for the fiscal year ending August 31, 1941, does not become available under the terms of the appropriation until September 1, 1940. Fulmore v. Lane, 140 S. W. 405.

(c) Senate Bill No. 36, as well as its predecessors, provides for adding the names of new recipients of old age assistance to the list of those already eligible. It must, therefore, of necessity contemplate that the total monthly grants which may be made cannot remain constant from September 1, 1939, to August 31, 1941, Therefore, to distribute the estimated income of the fund equally among twenty-four monthly payments would not be in keeping with the purposes manifested by considering Senate Bill No. 36 as a whole.

"(2) Assuming that investors may be
found who will agree to hold non-interest-
bearing old age assistance warrants, with-
out discount, issued under proper authority
to old age assistance recipients, by au-
thority of the State Department of Public
Welfare, may such warrants be issued at any
time during the current two-year period,
as required, to carry out the program on the
present basis, provided such warrants issued
do not exceed the available appropriated reve-
nue for assistance purposes for the current
biennium?"

In accordance with the general discussion in the
first part of this opinion and our answer to your question
No. (1), we answer this question in the negative.

"(3) Assuming that there would be an
accumulation of validly issued outstanding
warrants at February 1, 1941, not exceeding
the uncollected appropriated revenue for the
final seven months of the biennium, would
such warrants, under existing laws, be a
charge against appropriated old age assis-
tance revenues to be collected during the
period February 1, 1941, to August 31, 1941?
(Revenue to be collected under present laws
for the period from February 1, 1941, to Aug-
ust 31, 1941, is estimated to be approximately
$6,825,000.00)."

Validly issued outstanding warrants at February 1,
1941, would be a charge against appropriated old age assis-
tance revenues for the remainder of the fiscal year. For
a complete discussion of this question we refer to our opin-
ion No. 0-590 addressed to Honorable W. A. Little, dated
April 7, 1939, copy of which opinion we enclose herewith.
We believe, however, for the reasons hereinabove stated, that
in order that such a situation might come into existence,
it would require an act of the Legislature to authorize the
issuance of warrants in excess of moneys actually in the
fund at date of issuance.

"(4) Section 44 of Senate Bill No. 36
known as the State Department of Public Wel-
fare Act reads as follows:

"Sec. 44. If at any time State Funds

are not available to pay all grants of as-
sistance in full as authorized in this Act
and in House Bill No. 8, Acts Forty-fourth
Legislature, Third Called Session, said
grants shall be prorated in accordance with
requirements of the Federal Social Security
Board, insofar as those grants are concerned
for the payment of which in part Federal
Funds are allocated by said Social Security
Board.

"The effect of this section of the Act
apparently must be considered in the inter-
pretation of the validity of warrants issued,
against appropriated revenues to the assist-
ance fund. This section seems to mean that
such prorations and limitations as are applied
by the statute are contingent upon the Federal
Social Security Board first applying such
prorations and limitations, and until applied
by them in matching state funds, is not to be
applied by the State Department of Public Wel-
fare in their administration.

"In this connection I would like to ask
if there is any law on our statutes requiring
the proration of payments to recipients of old
age assistance other than the above section,
and what is the proper interpretation of the
above section?"

We cannot agree with your statement that Section 44
of Senate Bill No. 56 "seems to mean that such prorations and
limitations as are applied by the statute are contingent upon
the Federal Social Security Board first applying such pro-
rations and limitations . . ." It is our understanding that
the Federal Board does not prorate benefit payments -- it
merely matches dollar for dollar, the benefit payments pro-
vided by the several states. In the event a state, because
of insufficiency of funds, is unable to pay in full its social
security program, then the Federal Board prescribes certain
rules for distributing the available state money among the
eligible recipients, and the state is required to follow
such rules as a prerequisite to obtaining federal aid. As
hereinbefore stated, it is our opinion that Section 44 is an
express direction to the State Department of Public Welfare

to prorate grants of assistance "if at any time State funds are not available to pay all grants of assistance in full" and in the manner of applying the proration, the State Board shall be guided by the rules of the Federal Board in such cases. We know of no law on our statutes requiring the pro-rating of payments to recipients of old age assistance other than Section 44 of Senate Bill No. 36, except the corresponding provisions contained in House Bill 26 and House Bill 8 which are quoted in the first part of this opinion.

Yours very truly

ATTORNEY GENERAL OF TEXAS

(signed)

By

Walter R. Koch
Assistant

WRK:FL

ENCLOSURE

APPROVED SEP 30, 1939

(signed) Gerald C. Mann

ATTORNEY GENERAL OF TEXAS

APPROVED
opinion committee
By___BWB___
chairman